AO 241 (Rev. 09/17)

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 27 2020

JAMES N HATTEN, Clerk

By: _____ Deputy Clerk

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Southern District of Georgia |
|---|---|

| Name (under which you were convicted): Rolandas Milinavicius | Docket or Case No.: |
|---|---|

| Place of Confinement : Coffee Correctional Facility | Prisoner No.: 1:20-CV-1815 |
|---|---|

| Petitioner (include the name under which you were convicted) Rolandas Milinavicius | Respondent (authorized person having custody of petitioner) v. Timothy Ward, Commir., Georgia Department of Corrections. |
|---|---|

The Attorney General of the State of: Georgia, The Honorable Christopher Carr

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   Fulton County Superior Court, Fulton County Courthouse, 136 Pryor St., Atlanta, Georgia 30303

   (b) Criminal docket or case number (if you know): 07-SC-61939

2. (a) Date of the judgment of conviction (if you know): November 25, 2008

   (b) Date of sentencing: November 25, 2008

3. Length of sentence: Two life sentences to be served consecutively.

4. In this case, were you convicted on more than one count or of more than one crime?  ☒ Yes   ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case: Convictions: Counts 1 and 2, Murder; Counts 3 and 4, Felony murder; Counts 5 and 6, Aggravated assault; Counts 7 and 8, Possession of a firearm during the commission of a felony.

6. (a) What was your plea? (Check one)

   ☒ (1)   Not guilty        ☐ (3)   Nolo contendere (no contest)

   ☐ (2)   Guilty             ☐ (4)   Insanity plea

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?   N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

     ☒ Jury   ☐ Judge only

7.   Did you testify at a pretrial hearing, trial, or a post-trial hearing?

     ☒ Yes   ☐ No

8.   Did you appeal from the judgment of conviction?

     ☒ Yes   ☐ No

9.   If you did appeal, answer the following:

(a) Name of court:   The Supreme Court of Georgia

(b) Docket or case number (if you know):   S11A1281

(c) Result:   Judgement affirmed

(d) Date of result (if you know):   January 23, 2012

(e) Citation to the case (if you know):   Milinzvicius v. The State, 290 Ga 374 (2012)

(f) Grounds raised:   See attachment at page 17

(g) Did you seek further review by a higher state court?   ☐ Yes   ☒ No

     If yes, answer the following:

     (1) Name of court:   N/A

     (2) Docket or case number (if you know):   N/A

     (3) Result:   N/A

AO 241 (Rev. 09/17)

(4) Date of result (if you know): N/A

(5) Citation to the case (if you know): N/A

(6) Grounds raised: N/A

(h) Did you file a petition for certiorari in the United States Supreme Court?  ☐ Yes  ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): N/A

(2) Result: N/A

(3) Date of result (if you know): N/A

(4) Citation to the case (if you know): N/A

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?  ☒ Yes  ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: Mitchell County Superior Court

(2) Docket or case number (if you know): 13-V-014

(3) Date of filing (if you know):

(4) Nature of the proceeding: State habeas corpus

(5) Grounds raised: See attachment at pages 17-18

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☒ Yes  ☐ No

(7) Result: Denied

AO 241 (Rev. 09/17)

(8) Date of result (if you know): _July 5, 2018_

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _The Supreme Court of Georgia_

(2) Docket or case number (if you know): _S19H0048_

(3) Date of filing (if you know): _August 5, 2018_

(4) Nature of the proceeding: _Application for certificate of probable cause._

(5) Grounds raised: _See attachment at pg. 19_

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☒ No

(7) Result: _Denied_

(8) Date of result (if you know): _April 29, 2019_

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

AO 241 (Rev. 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☐ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:     ☐ Yes     ☐ No

(2) Second petition:   ☐ Yes     ☐ No

(3) Third petition:    ☐ Yes     ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.     For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:**     See attachment at page 20 - 21 _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See attachment pgs 20-21 _____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why:

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(c)       **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?      ☒   Yes      ☐   No

(2) If you did not raise this issue in your direct appeal, explain why:

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒  Yes      ☐   No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   State habeas corpus

Name and location of the court where the motion or petition was filed:   Mitchell County Superior

Court

Docket or case number (if you know):   13-V-014

Date of the court's decision:   July 5, 2018

Result (attach a copy of the court's opinion or order, if available):   Denied

_____

(3) Did you receive a hearing on your motion or petition?      ☒   Yes      ☐   No

(4) Did you appeal from the denial of your motion or petition?      ☒   Yes      ☐   No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?      ☒   Yes      ☐   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   The Supreme Court of Georgia

Docket or case number (if you know):   S19H0048

Date of the court's decision:   April 29, 2019

Result (attach a copy of the court's opinion or order, if available):   Denied

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

_____

_____

AO 241 (Rev. 09/17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: N/A

**GROUND TWO:**            See attachment at pages 22-26

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See attachment pgs. 22-26

(b) If you did not exhaust your state remedies on Ground Two, explain why: N/A

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?      ☒ Yes      ☐ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: N/A

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes      ☒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed: N/A

Docket or case number (if you know): N/A

AO 241 (Rev. 09/17)

Date of the court's decision: ___N/A_____

Result (attach a copy of the court's opinion or order, if available): ____N/A_____

_____

(3) Did you receive a hearing on your motion or petition? N/A      ☐ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition? N/A     ☐ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? N/A ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state: N/A

Name and location of the court where the appeal was filed: ___N/A_____

_____

Docket or case number (if you know): ___N/A_____

Date of the court's decision: ___N/A_____

Result (attach a copy of the court's opinion or order, if available): ___N/A_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

___N/A_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two : ___N/A_____

_____

_____

**GROUND THREE:** ___See attachment at page 26_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See attachment pg. 26_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(b) If you did not exhaust your state remedies on Ground Three, explain why:

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?      ☒ Yes      ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:   N/A

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes      ☒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   N/A

Name and location of the court where the motion or petition was filed:   N/A

Docket or case number (if you know):   N/A

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):   N/A

(3) Did you receive a hearing on your motion or petition?  N/A      ☐ Yes      ☐ No

(4) Did you appeal from the denial of your motion or petition?  N/A      ☐ Yes      ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? N/A ☐ Yes      ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:  N/A

Name and location of the court where the appeal was filed:   N/A

Docket or case number (if you know):   N/A

Date of the court's decision:   N/A

Result (attach a copy of the court's opinion or order, if available):   N/A

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:   N/A

**GROUND FOUR:**    See attachment pages 27-32

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See attachment pages 27-32

✱ Grounds 5, 6, 7 & 8 are at pages

(b) If you did not exhaust your state remedies on Ground Four, explain why:   N/A

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?      ☐ Yes      ☒ No

(2) If you did not raise this issue in your direct appeal, explain why:   Appellate counsel rendered ineffective assistance of counsel on direct appeal

(d)    **Post-Conviction Proceedings**:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   Motion to expand the record and stay habeas proceedings.

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed: _Mitchell Superior Court_

Docket or case number (if you know): _13-Y-014_

Date of the court's decision: _July 5, 2018_

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☒ No

(4) Did you appeal from the denial of your motion or petition?  ☒ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☒ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _The Supreme Court of Georgia_

Docket or case number (if you know): _S19H0048_

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available): _Denied_

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_N/A_

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

AO 241
(Rev. 10/07)

16.   Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing:


(b) At arraignment and plea:


(c) At trial: Bruce Harvey


(d) At sentencing: Bruce Harvey


(e) On appeal: Brian Steel


(f) In any post-conviction proceeding: Ashleigh Merchant, 701 Whitlock Ave., S.W.,
Ste. J-43, Marietta, Ga., 30064


(g) On appeal from any ruling against you in a post-conviction proceeding:



17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?        ☐ Yes   ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:
N/A



(b) Give the date the other sentence was imposed: N/A

(c) Give the length of the other sentence: N/A

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?          ☐ Yes   ☒ No

18.   TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

AO 241
(Rev. 10/07)

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.   § 2244(d) provides in part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

13.     Please answer these additional questions about the petition you are filing:

    (a)     Have all grounds for relief that you have raised in this petition been presented to the highest state court

        having jurisdiction?   ☒ Yes     ☐  No

        If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

        presenting them:    N/A

    (b)     Is there any ground in this petition that has not been presented in some state or federal court? If so, which

        ground or grounds have not been presented, and state your reasons for not presenting them:

        N/A

14.     Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

    that you challenge in this petition?     ☐  Yes   ☒ No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues

    raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy

    of any court opinion or order, if available.    N/A

15.     Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

    the judgment you are challenging?     ☐  Yes   ☒ No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues

    raised.    N/A

(2)     The time during which a properly filed application for State post-conviction or other collateral review
with respect to the pertinent judgment or claim is pending shall not be counted toward any period of
limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

or any other relief to which petitioner may be entitled.

( Pro se )
_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on    4-13-20    (month, date, year).

Executed (signed) on    4-7-20    (date).

Rolandas Milinavicius
_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_Dalesandro J Johns_
4-7-2020

Milinavisius v Ward

Attachments to Habeas Petition

9(f) Grounds Raised On Direct Appeal

1. Trial court erred by failing to suppress in custody statements to police without a Lithuanian interpreter. Petitioner did not voluntarily waive his rights under Miranda v. Arizona, 384 U.S. 436 (1966)

2. Petitioner was absent during a critical stage of the proceedings when the trial court dismissed a juror during trial.

3. The trial court erred when it gave an abbreviated charge on the defense of justification by omitting a defendant may use deadly force to " prevent the commission of a forcible felony.

11(a)(5) Grounds Raised In State Habeas Corpus Petition

1. Ineffective assistance of counsel when counsel failed to adequately prepare for the case.

2. Ineffective assistance of counsel when counsel failed to secure/retain a qualified translator in Petitioners native language of Lithuanian at trial.

3. Appellate counsel rendered ineffective assistance of counsel for failing to raise the issue of trial counsel's ineffectiveness.

4. Appellate counsel rendered ineffective assistance of counsel by failing to raise the claim that trial counsel rendered ineffective assistance of counsel by failing to seek a jury charge on justification that included the definition of a forcible felony.

5. Trial counsel failed to investigate defense or evidence

6. Trial counsel was ineffective when he failed to move for a mistrial based on prosecutor misconduct.

7. Trial counsel was ineffective when he failed to address the destruction of evidence.

8. Trial counsel was ineffective when he failed to secure expert witnesses.

9. Appellate counsel rendered ineffective assistance by failing to assert the foregoing trial counsel errors on direct appeal.

10. State habeas counsel rendered ineffective assistance by ignoring Petitioners request to raise grounds 5,6,7, 8 and 9 above in the State habeas corpus proceeding.

II(b)(5) Grounds Raised In The Application For
Certificate Of Probable Cause.

1. State habeas court failed to rule on grounds
raised in the petition.

2. Ineffective assistance of habeas counsel.

3. Ineffective assistance of trial, appellate and
habeas counsel in failing to obtain gunshot
residue test results.

4. State habeas court erred by failing to inquire
or address Petitioner's complaint about habeas
counsel.

5. Ineffective assistance of counsel, incorporating
the grounds raised in motion to expand record /
stay proceedings.

6. Ineffective assistance of trial counsel for failing
to submit jury instructions in writing.

7. Ineffective assistance of trial counsel for failing
to obtain written order on suppression motion

8. State habeas counsel was ineffective for failing
to raise meritorious grounds.

19

12. <u>Grounds for Relief</u>.

A. <u>Ground One</u>:  The trial courts instruction was so vague it relieved the State from it's burden of disproving the justification defense. Over counsel's objection the trial court refused to give a proper instruction on justification by omitting a critical component of the statute authorizing deadly force to prevent a forcible felony. The charge as given undermined Petitioner's asserted justification defense and resulted in a violation of his right of due process of law. The prosecutor's closing argument exacerbated the error.

<u>Supporting Facts</u>:

Petitioner was charged in the shooting deaths of his two employees, Martynas Simokaitis and Inga Contreras. Petitioner denied shooting Inga, but admitted to shooting Martynas in self defense. At trial he asserted the affirmative defense of justification codified under Georgia law at O.C.G.A. § 16-3-21.

At trial Petitioner testified that after exiting the restroom Martynas ran towards him with a gun in his hand and instructed Petitioner to go to the office. Once there Martynas asked about a package before pointing the gun at him and pulling the trigger. The gun malfunctioned allowing him to take the gun from Martynas. He tried to call for help, but the office phone did not work. He went to the break room where Martynas punched Petitioner in the chest twice. He fell to the floor when Martynas picked up a chair and hit him over the head. Petitioner fired a warning shot but Martynas continued his assault telling Petitioner "I'll kill you, I'll kill you." (T 759-764).

After giving the incomplete charge trial counsel objected and this colloquy took place:

Mr. Harvey: "... The rest of the charge says: "Or to prevent the commission of a forcible felony. You getting hit over the head with a chair, thats a forcible

felony and you left that out?"

The Court: " What's the difference in that and to protect yourself."

Mr. Harvey: " Because it's, thats part of the charge."

The Court : " I think it's covered sufficiently. I got your exception." (T 914)

The prosecutor's closing argument included the following :

"... You cannot use excessive or unlawful force while acting in self defense. Okay. You must decide if the force used exceeded that which the defendant reasonably believed was necessary to defend against the victims unlawful force if any"... " you must decide, oh, he used self-defense, but was it excessive? Did it exceed what was reasonably necessary? So, in other words, if he was protecting himself against a chair, should he have used a gun? Was that excessive? We submit that it was. You have to determine was that reasonable." ( T 843-844)

The charge on justification encompasses more than self defense. It also authorizes deadly force to prevent a "forcible felony." The law is clear that once a justification defense is raised, the burden shifts to the State to disprove that defense beyond a reasonable doubt. (T 909)

By omitting the forcible felony from its charge, the trial court relieved the State of its burden of disproving that element of the justification defense. In that instance, the State would be required to disprove that being attacked with a chair wasn't a forcible felony.

'21'

B. Ground two:

Petitioner did not voluntarily or intelligently waive his right to remain silent and to an attorney during the police interview and the trial court erred when it denied the motion to suppress the in custody statements used against him at trial.

Supporting Facts:

Petitioner emigrated from Lithuania approximately five years prior to his arrest. The evidence in the record reveals that he had an extremely limited understanding of the English language. And, as a first time arrestee, did not even understand what "rights" he was waiving as he was raised under Communist government, where such rights do not exist. At trial it was revealed that not only did Petitioner not understand the Detectives questions, but they could not understand his responses. During the trial, the States own witness Rytis Daujota testified that the Detectives called and asked him to translate. Here are some of the excerpts of that testimony:

Rytis: They called me
  Q: What did they say?
Rytis: They said they have hard time to understand him and maybe we will need my help to translate.
  Q: Did you hear back from them?
Rytis: .Yeah. And I think they called me back and I said, do you still need me? When are you going to come? They said we'll call you back

         (T 589-590)

Mr. Daujota went on to testify that a few hours later two

officers arrived, but not to bring him the station to help translate, but to question him. By this time the Detectives had already manipulated a waiver and statements from Petitioner.

They then gained access to Mr. Daujota's home under the guise of him translating for them and instead began questioning him. In different words... they fabricated a "witness."

Further evidence that Petitioner did not understand what the Detectives were saying or what rights he was waiving may be found in the interview itself. Here is a portion of the interview:

Det. Glover : An attorney can be provided for you at no cost to you. Do you understand that?
Petitioner : What does it mean? Attorney [indistinct]
Det. Glover : Sir
Petitioner : What does mean I must go to my [indistinct] what is in English who representative and court people?
Det. Glover : Yeah, a representative in court is called an attorney.
Petitioner : An attorney.
Det Glover : Or a lawyer.
Petitioner : Lawyer. Lawyer.       (See, St.Ex 79, pg. 6) [1]

The facts are clear. Petitioner's waiver of his right to remain silent and his right to an attorney could not be voluntary or intelligent because he did not understand what was being said, or all that what was being said implied. This is particularly true in regards the warning that " <u>Anything you say can and will be used against you in court</u>." (emphasis provided). And the State did just that, and extrapolated from his statements to police that his business was

---

1. Petitioner notes that due to prison officials losing his entire defense file (See, Ex. 1) he only has pages 1-6 of the interview.

experiencing thefts and vandalism to his somehow being involved with the Russian mafia.[1]

During trial Petitioner described his inability to communicate with Investigators. Here are some relevant portions of that testimony regarding the police interview with Detective Glover:

Q: " Did you tell him everything you could remember about the events ?"

A: (Through the interpreter) "I was trying to tell him, but I really couldn't, because I didn't have enough knowledge of many words in English I needed to use. I didn't know how to describe the movement. I didn't know how the words for some subjects." (T780)

Q: " Do you tell Detective Glover that Martynas, earlier that day, had a gun?"

A: (Through the interpreter) "I wanted to, but I couldn't because there were many subjects involved that they didn't know the name in English." and "... I wanted to, but my English was so weak, and for this situation, I couldn't describe the situation with my limited English."

" I wanted to tell him everything from the very beginning

---

1. This claim by the State lacks any evidentiary support. The State presented no evidence that Petitioner knew or associated in any form or fashion with any criminal organization or engaged in any criminal activity. This will be addressed more fully in part (5) of the IAC claim, Ground four.

I wanted to tell him, and tried to, but when I was speaking, I just know it, as I'm thinking one thing, and something else is completely different coming out because of the words I didn't know. I cannot put the words together." ( T 809-810)

When asked if he could or could not say the word gun in English Petitioner explained how they started using their hands to communicate:

"When he understood that I don't speak English very well, WE STARTED USING OUR HANDS TO HELP EACH OTHER ( T 811) Lines 1-3

Q: "So its your testimony that you couldn't tell Detective Glover this?" (That Martynas shot at him twice)

A: (Through the interpreter) "The Detective did not ask me. The Detective showed me some, what he calls, calendar. The words he's using. He started looking at this calendar showing it to me and started reading it. I really didn't understand exactly what he was reading to me." ( T 811)

" And the Detective Glover told me that he's going to call my friend, Rytis, and he's going to maybe come and help us. So, I was waiting for Rytis. So, I was waiting for Rytis. I hoped that he would come, and he will interpret between us, and I'll tell him the story from the very beginning, and we are not going to have any problems." ( T 812 )

It is unclear whether hand signs were used by Det. Glover to advise Petitioner of his right to remain silent or to have an attorney present, or what those rights meant and more importantly, what his waiver of these federally protected rights

meant... that everything he said can and will, be used against him in a court of law.[2] What is clear is that Petitioner could not understand Det. Glover, nor could Det. Glover understand Petitioner. Thats why they called Rytis to interpret.

The State took full advantage of the error, using his statements and evidence derived from Petitioner's waiver's against him throughout the trial. In light of these facts the Georgia Supreme Courts resolution of this error was an unreasonable application of clearly established federal law as established by the U.S. Supreme Court decision in <u>Miranda v Arizona</u>, 384 U.S. 436 (1966)

C.   <u>Ground three</u>:

Petitioner was absent during a critical stage of the proceeding when a juror was substituted out of his presence, and a charge conference was conducted.

<u>Supporting facts</u>:

When the proceedings began of Nov. 21st, 2008 a charge conference was conducted and a juror was substituted. (T 721-733). After this occured Petitioner was then brought into the courtroom to provide testimony. This precluded him from assisting in his defense in violation of his 5th, 6th, & 14th Amendment rights guaranteed under the U.S. Constitution.

_____

2. Once Petitioner receives the State court record a copy of the videorecorded interview will be provided for this Courts review.

D. Ground four:

Petitioner was denied effective assistance of counsel at trial when counsel failed to: (1) Retain the services of a forensic expert in crime scene reconstruction; (2) Obtain the gunshot (3) residue test results taken from the hands of Martynas Simokaitis; Retain the services of a qualified interpreter at trial; (4) Object to the improper comments of the prosecutor.


Supporting facts:

(1)  At trial Petitioner raised the affirmative defense of justification. Once a justification defense is raised a defendant must present evidence that he was justified in using deadly force. A review of the record will show that trial counsel failed to call a single witness or present any evidence at all. In his objection to the testimony of the State's expert trial counsel informed the court:

> " If he testifies as to area's of blood spatter, I'm going
> to be providing -- and I'll tell you right now -- ineffective
> assistance of counsel on behalf of this defendant because
> I have not had an opportunity to hire an expert of my
> own, and <u>I need that opportunity if those area's are
> going to be gone into</u>" (T 834)

Regardless of the State's witness, this was an area of investigation that would be critical to the justification defense. Petitioner described his version of events as follows: He was in the restroom when Mr. Simokaitis shot Inga Contreras, and attacked him when he came out screaming he would kill Petitioner. Only the gun jammed allowing him to take the weapon from Martynas. When he asked Martynas " Please, explain to me what is happening", Martynas hit him twice in the chest, causing him to lose his breath. Martynas then

hit Petitioner with a chair causing him to fall to the floor. (Petitioner demonstrated at trial he was in the sitting position leaning back) (T 763) It was only then that Petitioner shot Martynas.

(2)   This is a forensic evidence case if there ever was one, and counsel was ineffective when he failed to retain defense experts. The first piece of critical evidence would be the gunshot residue taken from the hands of Mr. Simokaitis. At trial Mr. Steve Atkinson, the medical examiner that autopsied Mr. Simokatis explained that he did perform gunshot primer residue testing and sent them to the crime lab. (T 707). The importance of the results of the gunshot residue test cannot be gainsaid, as it would have supported the theory that Martyna's shot Inga, before attacking Petitioner. There is no evidence in the record the the results were entered into evidence at any stage of the proceedings, including the trial. This is a glaring omission and counsel was ineffective in failing to investigate or obtain the test results.

The blood spatter evidence was equally, if not more important to Petitioner's justification defense and the evidence bears this out. Under the States version of events, the chest shot brought Martynas "to his knees"... and "he's going back, and the Defendant then comes behind him, shoots him in the head first. He missed, hit's him in the ear, and then straight in the center of the head for good measure..." and "There was blood up against the wall where his head hit it and fell back." (T 876)

This version of events defies the laws of physics. First, if Martynas is on his knee's "going back" it would be impossible for Petitioner to get up from a sitting position and get behind him and deliver two shots. Much less a shot the State explained!

" Do you know how steady your hand has to be? Perfect shot in the back of the head..." and "How did he get behind him and get that perfect shot?" (T 862)

If the position in which Martynas fell is any indication, he didn't. Applying the common sense the prosecutor urged the jury to exercise. Martynas was on his knee's and "you don't need a medical examiner to tell you that the chest brought him down" (T 876). Notwithstanding the fact it would require lightening speed to get into a position to gain the "perfect shot", but that shot would have caused Martynas to crumple. His knee's would have been curled, the body would have fallen to the side, and had he fallen straight back the lower leg would have been underneath the upper leg.

In the alternative, a shot to the back of the head to a person on their knee's would propel the body forward, not backward. The photograph of the scene showing Martynas may be seen at State Exhibit #8. In sum, the evidence shows that the States theory of events would be impossible and a crime scene reconstruction expert would have debunked it.

Dr. Atkinson testified there were nine shots fired causing nine entrance and exit wounds. (T 698-705). However, the crime scene technician testified that only six casings were found in the room where Martynas was killed, and one of those shots hit the east wall of the room. (T 413-414). Trial counsel brought this discrepancy to the jury's attention, but failed to get an expert in bullet path trajectory to support his argument or challenge Dr. Atkinson's findings and testimony. (T 852-854).

The prosecutor took advantage of counsel's error, successfully arguing the casings didn't matter... "He was shot nine times, through and through. The medical examiner said it." (T 888-889) An expert could have shown the jury the impossibility of the States version and proved the shots were in fact fired from a sitting position.

These are basic level investigation omissions. Trial counsel was in possession of a detailed package from Cecil Hutchins, the States forensic expert that processed the scene and gathered the evidence. (T 383-385). After asserting a justification defense no competent attorney would neglect, or forego

the services of expert witnesses in a case such as this.

Counsel's ineffectiveness deprived Petitioner of expert testimony that could have supported his version of events and corroborate Petitioner's testimony.


(3)   Throughout the proceedings, including client meeting's trial counsel failed to retain the services of a qualified interpreter in the Lituanian language. There is no evidence in the record of the interpreter's qualifications, certifications, what oath was administered, or even the interpreter's name.[1]

To avoid reallegation, Petitioner adopts the facts in ground two that show his lack of knowledge in the English language substantially hindered his ability to assist in his defense prior to trial and during trial.

This was particularly true during the testimony of Det. Glover when he testified about the substance of his interview with Petitioner. Also, during the expert testimony of Cecil Hutchins and Dr. Steve Atkinson explaining the States theory of events. Indeed, there were occasions where the interpreter requested that witnesses "slow down" (T          ).

The interpreter at trial had to pause several times to check the dictionary for the meaning of certain words.

(4)   In the alternative, the trial court informed counsel that he was "out of luck" when counsel requested that Mrs. Lauren Fredella, who interpreted the Jackson-Denno hearing, to be

---

1.   The record of the proceedings, including pages one through 315 of the trial transcript has been lost due to the actions of prison officials. This petition is being prepared with the assistance of a fellow inmate. Petitioner retains the right to add or delete errors upon receipt of the complete record.

appointed as interpreter at trial. (T 102).

The lack of a qualified and competent interpreter rendered Petitioner's trial fundamentally unfair because he was unable to participate or assist in any meaningful way, especially in confronting the witnesses against him.


(5)   Trial counsel made no objection when the prosecutor, in her closing arguments made the following improper remarks:

"... there was no provocation, other than his version of events, and he's a liar. He's already proven himself a liar." (T 885-886).

"Now, we know that it is not self defense because everything that the Defendant testified to was what we call in in the United States a bold face lie---." (T 841).

"He wasn't provoked by Martynas. That whole litany that took hours while he was on the stand was nothing but lies." (T 843).

"When you start lying, you are bound to catch yourself up. You are going to get caught up. And he got caught up..." (T 861).

"According to him, he couldn't use the word gun. But we know thats a lie." (T 867).

"He had to come up with a lie, like he did, and claim, oh, I think Martynas did it." "This whole elaborate lie that was very vivid, very detailed... "

---

1. This information is gleaned from notes of previous person's who have assisted Petitioner in the past.

31

The State did not present any impeaching information or evidence that Petitioner was in any way unworthy of belief

The prosecutor also claimed that Petitioner was "...taken away by some Russian mafia..." (T 874). Again, there is no evidence in the record of any Russian mafia nor did the State submit any. Trial counsel failed to make any objection.

By calling Petitioner a liar and associated with the Russian Mafia, the State deprived him of a fair trial and counsel was ineffective in failing to object. This resulted in violations of his 5th, 6th, and 14th Amendment rights.


E.  Ground five:

Appellate counsel rendered ineffective assistance when he: (1) abandoned grounds that had a greater likelihood of success than those raised on direct appeal; (2) failed to secure the testimony of witnesses at the new trial motion evidentiary hearing, including an expert in linguistics.


Supporting facts: [3]

Although appellate counsel raised the interpreter error in the context of trial court error in denying the motion to suppress in custody statements due to lack of an interpreter he never retained the services of a linguistics expert for the hearing. In fact, appellate counsel called no witnesses at all.

---

3.  Petitioners new trial motion transcripts, motion and most appellate material has been lost by prison officials. Petitioner retains the right to amend this petition upon reacquiring the appellate to add or delete grounds in this petition.

If this Court determines that trial counsel was ineffective by: (1) failing to obtain the gunshot residue tests of Martynas's hands from the G.B.I; (2) failing to secure expert testimony in the field of crime scene reconstruction including bullet path trajectory, blood spatter; (3) failing to object to the improper comments of the prosecutor, Then it should find that appellate counsel was ineffective by not raising those issues on direct appeal. These issues directly relate to the guilt or innocence of Petitioner and are much stronger issues on appeal than those raised by appellate counsel.

## F. Ground Six:

Habeas counsel rendered ineffective assistance of counsel when: (1) she withdrew the grounds raised in the initial petition (See, Part II(a)(5) grounds 1, 2 and 3) and substituted those grounds with a single ground already determined by the Georgia Supreme Court as meritless; (2) misappropriated eight thousand dollars that was earmarked for the specific purpose of securing expert testimony in crime scene reconstruction for the evidentiary hearing on the State habeas corpus petition.

## Supporting facts:

(1) State habeas counsel was retained to assert grounds of ineffective assistance of trial and appellate counsel when they failed to adequately prepare for the case and failure to raise those claims on direct appeal and failing to retain a qualified interpreter in Petitioner's language -- Lithuanian- The evidentiary hearing was held on February 21, 2017. Habeas counsel failed to call any expert witnesses and one week later on February 27, 2017, filed an amended petition, withdrawing the grounds she was retained to pursue, and replaced those grounds with a single ground that

had already been decided adversely to Petitioners to Petitioner
by the Georgia Supreme Court. At no time prior to withdrawing
the grounds raised in the initial petition did habeas counsel
consult or advise Petitioner of her intention to do so.

Prior to the hearing, habeas counsel received $8000⁰⁰ to retain
the services of a forensic expert in crime scene reconstruction.
Instead, counsel applied those funds to her fee. This explains her
decision to withdraw the grounds raised in the initial petition,
because there was no longer any need for an expert in forensic
crime scene reconstruction to testify about the manner in which
a jury charge should be requested.

The actions of habeas counsel had the effect of vitiating the
State habeas corpus proceeding and was a denial of Petitioners
rights guaranteed under the 5th, 6th and 14th Amendments to
the U.S. Constitution.

G.  Ground Seven :

The State habeas corpus court failed to exercise sound judicial
discretion when it failed to address Petitioners several motions
and requests involving attorney issues and to stay the
proceedings.

Supporting facts :

As stated above, Petitioner was unaware that habeas counsel
withdrew the grounds she was retained to raise until the
evidentiary hearing had concluded. Prior to the courts ruling Petitio-
ner filed the following motions: (1) Motion to stay the proceedings
and/or expand the record; (2) Motion for evidentiary hearing on

attorney issues; Motion to determine damages on forensic expert (3) importance; Request for subpeona of documents duces tecum; (5) (4) Motion to proceed pro se.

Without deciding a single motion, the habeas court issued its final order. In failing to decide those motions, the result was a violation of Petitioner's 5th, 6th and 14th Amendment rights guaranteed by the U.S. Constitution.

H.  Ground eight:

The accumulation of errors in this case violated Petitioners right to due process.

Supporting Facts:

See above.

Respectfully submitted this     day of April, 2020 by

Rolandas Milinavicius, # 1297095
Coffee Corr. Facility
P.O. Box 650
Nicholls, Ga. 31554

Certificate of Service

This is to certify that a copy of the accompanying habeas petition and attachments have been sent via regular U.S. Mail with adequate postage to ensure delivery to:

Christopher M. Carr, Georgia Attorney General Office, 40 Capitol Sq., S.W., Atlanta, Ga. 30334

Date: 4-13-20

Rolandas Milinavicius
#1297095
Coffee Corr. Facility
P.O. Box 650
Nicholls, Ga. 31554